**Margaret MILLER, Plaintiff,**

v.

**WASHINGTON WORKPLACE, INC., et al., Defendants.**

**No. CIV.03–1110–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 8, 2004.

Jill Marie Dennis, Hunton & Williams, McLean, VA, Robert Scott Oswald, The Employment Law Group PLLC, Washington, DC, for plaintiffs/counter–defendants/third–party defendant.

Robert Scott Oswald, The Employment Law Group PLLC, Washington, DC, Jill Marie Dennis, Hunton & Williams, McLean, VA, for defendants/counter–claimants/third–party plaintiff.

## MEMORANDUM OPINION

CACHERIS, District Judge.

This case comes before the Court on the Defendants Washington Workplace ("Workplace") and John A. Murphy's ("Murphy") Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I. Background

### A. Procedural History

This case began when Workplace filed a Motion for Judgment in the Circuit Court for Arlington County against its former employee Margaret Miller ("Miller") for breach of contract. Miller subsequently filed a demurrer, third-party claims against Murphy, and counterclaims against Workplace. Workplace and Murphy then removed the action to this Court, pursuant to 28 U.S.C. §§ 1441, 1446, and 1331. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 based upon Miller's assertion of claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

Once the case was removed, Workplace and Murphy moved to dismiss the matter based on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Miller responded to the motion to dismiss and moved to realign the parties. The Court granted Miller's motion. Miller, therefore, will be referred to as the Plaintiff and Counter–Defendant. Workplace will be referred to as a Defendant and Counter–Plaintiff, and Murphy will be referred to as a Defendant.

Miller maintains 13 claims, in total, against the Defendants. Against Washington Workplace, Miller's counterclaim asserts eight claims: Assault (Count I); Battery (Count II); False imprisonment (Count III); Fraud (Count IV); Sexual Discrimination in violation of Title VII (Count V); Discriminatory Retaliation in violation of Title VII (Count VI); common law wrongful termination in violation of Va.Code Ann. § 18.2–152.7:1 (Count VII); and, wrongful termination in violation of Va.Code Ann. § 40.1–29 (Count VIII). Against Murphy, Miller makes the following third party claims: Assault (Count I); Battery (Count II); False imprisonment (Count III); Fraud (Count IV); Defamation (Count V). Prior to oral argument,

Miller withdrew Counts I, II, and III against Washington Workplace.

### B. Facts Alleged by Miller

At all times relevant to the complaint, Workplace employed Miller as a salesperson. Murphy was her supervisor and the president of Workplace. When Miller interviewed for the position, Murphy represented that he distributed the business leads equally among his sales staff. Miller worked as a salesperson from December 1, 2000 until early June 2003.

During her time at Workplace, Miller began to have difficulty with Murphy. Murphy failed to distribute the business leads equally, and often took business away from her. Murphy referred to her as a "screw up" or a "nothing sales person." He openly discussed her sales figures with other employees. Also, he claimed that she had accumulated unfounded draws on her sales commissions.

Additionally, Miller complains of the hostile work environment created by Murphy. Murphy told Miller how he used the internet site "Match.com" to meet women. He showed her his personal ad and encouraged her to use the website so that she could have sex like he did. Murphy also submitted Miller's name to Match.com. He recommended that she post her personal information on a website for divorced Catholics. Murphy often referred to the office's sexual harassment policy as the "porno/internet" document.

On June 3, 2003, Miller made an inquiry to Workplace's office manager requesting a copy of the sexual harassment policy and a copy of her most recent commissions/wage statement. (Compl.¶ 60.) Before she received these materials, Murphy called her at her desk and said, "why did you ask for a copy of the pornography/internet policy you signed?" (*Id.* ¶ 61.) Miller responded, stating "I did not ask you,

John." (*Id.* ¶ 63.) Murphy then said, "I do not like your answer," and slammed down the phone. (*Id.* ¶ 64.) Moments later, Murphy charged into Miller's office, grabbed her by the arm, hurled her towards the door, and pushed her into a metal framed guest chair in her office. (*Id.* ¶ 65.) Murphy then shouted that Miller was fired. (*Id.*) Murphy grabbed Miller's arm and attempted to remove some papers from her grasp. (*Id.* ¶ 67–68.) Murphy would not let her leave her office with her personal belongings and appeared out of control and physically threatening. (*Id.* ¶ 71.) Murphy continued to prevent Miller from retrieving her belongings, by sitting on her desk and kicking his heels against the drawer. (*Id.* ¶ 82–83.) When the police arrived, Miller was finally able to collect her belongings and leave the premises. (*Id.* ¶ 91.)

### II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir.1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir.1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In ruling on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.* In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R.Civ.P. 8.

## III. Analysis

### A. Intentional Tort Claims Against Murphy

Miller asserts three intentional tort claims against Murphy. Defendants contend that Virginia Workers' Compensation Act ("the Act"), Va.Code Ann. § 65.2–100 *et seq.* provides the exclusive remedy for the injuries Miller claims were caused by Murphy's allegedly tortious conduct. The Court agrees with the Defendants and holds that it does not have jurisdiction over these claims.

■ The Act provides an employee certain rights and remedies if the employee has suffered "an injury by accident arising out of and in the course of the employment." Va.Code. Ann. § 65.2–101. The rights and remedies granted to an employee under the Act, "shall excluded all other rights and remedies of such employee . . . at common law or otherwise." Va.Code Ann. § 65.2–307. The Act precludes an employee from bringing common law personal injury claims against a co-employee or employer for injuries sustained during the course of employment.

■ An injury is subject to the exclusivity provision of the Act if it is the result of an accident and arises out of and in the course of the employment. *Richmond Newspapers, Inc. v. Hazelwood,* 249 Va. 369, 457 S.E.2d 56, 58 (1995). Thus, the critical inquiry is whether Miller's injury was (1) an injury by accident, (2) arising out of, (3) and in the course of, her employment. *Combs v. Virginia Elec. & Power Co.,* 259 Va. 503, 525 S.E.2d 278, 281 (2000). If any one of these elements is missing, then Miller's claim is not covered by the Act. *Id.*

■ The first condition that the Defendant must show is that Miller sustained "an injury by accident." For an injury to be considered "by accident," it must have occurred at a particular time and place, as opposed to cumulative injury from repetitive trauma. *Sutter v. First Union Nat. Bank of Va., Inc.,* 932 F.Supp. 753, 758 (E.D.Va.,1996) (citing *Morris v. Morris,* 238 Va. 578, 385 S.E.2d 858, 865 (1989)).

■ The act covers injuries caused by an intentional or willful assault upon an employee by a co-worker or a third party. *Continental Life Ins. Co. v. Gough,* 161 Va. 755, 172 S.E. 264, 266 (1934) (holding that assault upon an employee is an "injury by accident" within the meaning of the statute); *Haigh v. Matsushita Elec. Corp. of Am.,* 676 F.Supp. 1332, 1352–54 (E.D.Va.1987) (Spencer, J.) (holding that Virginia does not recognize an intentional tort exception to worker's compensation coverage). *But see McGreevy v. Racal–Dana Instruments, Inc.,* 690 F.Supp. 468, 470 (E.D.Va.1988) (Ellis, J.) (holding that injuries from intentional torts are not considered to be "by accident").

■ The Court holds that Workplace has shown that Miller sustained an injury by accident. Were this Court deciding this case against a blank slate, it might arrive at the same conclusion of the court in *McGreevy.* Given the Virginia state law precedents, the Court finds that the case of *Sutter v. First Union Nat. Bank of Virginia, Inc.,* 932 F.Supp. 753, 758 (E.D.Va.1996) controlling. In that case, the plaintiff alleged that after she was terminated from her employment, her boss "grabbed" her against her will and "forcibly removed" her from the premises. *Sutter,* 932 F.Supp. at 758. The court held that the plaintiff had sustained an "injury by accident." *Id.* Miller's injuries were caused under almost identical circum-

stances. Accordingly, Miller's injuries occurred "by accident" under the Act.

■ The second element of coverage by the Act is also met. This element must be construed liberally in favor of coverage under the Act. *Brown v. Reed,* 209 Va. 562, 165 S.E.2d 394, 396 (1969). In cases involving intentional torts, "the necessary causal connection may be established if the evidence shows that the attack was directed against the claimant as an employee or because of the employment." *City of Richmond v. Braxton,* 230 Va. 161, 335 S.E.2d 259, 262 (1985) (citing *Continental Life Ins. Co. v. Gough,* 161 Va. 755, 172 S.E. 264, 266 (1934)).

Miller contends that *Braxton* controls this case. In *Braxton,* the Virginia Supreme Court held that a supervisor's sexual assault of the plaintiff was "of a personal nature as it was not directed against the employee as part of the employment relationship and was in no way in furtherance of the employer's business." 335 S.E.2d at 262. Miller, likewise, contends that personal animus drove Murphy's attack and imprisonment of Miller.

The Court, however, remains unconvinced and holds that this Court's decision in *Sutter* controls. Like in *Sutter,* every event in this scenario, Miller's discontent with Murphy's workplace conduct, her request for a copy of the sexual harassment policy, and Murphy's attack upon her, was work-related. *See* 932 F.Supp. at 759. Furthermore, Virginia cases are legion holding that intentional torts committed during the course of a termination are covered by the Act. *See, e.g., Abney v. Wimer,* 2002 WL 32072926, 60 Va. Cir. 87 (Va. Cir. Ct. 2002)(holding assault arose out of employment where it involved the termination of an employee following a work-related discussion with supervisor); *Rucker v. Wells,* 1997 WL 1070515, 41 Va. Cir. 340 (Va. Cir. Ct. 1997) (holding that

the Act covered defendant throwing a soda can at plaintiff during a work-related discussion); *Schrmebs v. Chick–Fil–A, Inc.,* Civ. A. No. 01–CA–1565–A (holding plaintiff's claims were barred by the act where manager dragged plaintiff to the back of the restaurant and locked him in a freezer). Murphy attacked Miller, because of her request for a copy of the sexual harassment policy. The requisite causal connection has been met.

Finally, the Miller's injury arose during the course of the employment. While the second element, "arising out of the employment," refers to causation, the third element refers to the time, place, and circumstances of the accident. *Sutter,* 932 F.Supp. at 759. The Court need not dwell on this element as it is clearly met. The injuries occurred during the workday and at Miller's place of employment.

Accordingly, the Court will grant the Defendants' motion to dismiss Miller's common law tort claims—assault, battery, and false imprisonment—against Murphy.

### B. Fraud

■ In Count IV, Miller asserts claims of fraud against both Defendants. Miller alleges that when Murphy hired her, he stated that he distributed leads to all of his salespeople equally. (Countercl.¶ 36.) She claims that this was fraudulent, because he "failed to distribute equally business leads between the sales people." (*Id.* ¶ 38.) Furthermore, he took business away from Miller, telling the other salespeople repeatedly that she was a "screw up" and a "nothing sales person." (*Id.* ¶ 39.)

■ Defendants argue that these statements do not state an actionable claim for fraud. Murphy's representation that "he distributed all business leads equally among his sales staff" was not a misrepre-

sentation of a pre-existing fact, according to the Defendants, but rather a promise to do so in the future. Under Virginia law, fraud "must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." *Yuzefovsky v. St. John's Wood Apartments,* 261 Va. 97, 540 S.E.2d 134, 142 (2001).

Plaintiff has pled fraud with particularity: On or about December 1, 2000, when Miller interviewed with Murphy, he stated that he distributed business leads equally among his staff. Given the posture of the case, the Court must accept the factual allegations in the Complaint as true and construe them in a light most favorable to the Plaintiff, *Goldstein v. Malcolm G. Fries & Assoc., Inc.,* 72 F.Supp.2d 620, 623 (E.D.Va.1999), and only grant a motion to dismiss where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States,* 947 F.2d 1169, 1177 (4th Cir.1991).

At first blush, a promise to distribute business leads equally among a sales force seems to be merely an unfulfilled promise. However, Miller alleges that Murphy stated that "he distributed" leads equally. Miller could still show that, as of December 1, 2000, Murphy distributed the leads unequally among his sales staff. If Murphy dispensed the business leads unequally, but told Miller otherwise to induce her to accept the position, then his statement would be a misstatement of a pre-existing fact.

Since it appears to this Court that Miller could prove a set of facts, which could entitle her to relief, the Court cannot, at this time, grant the Defendants' motion to dismiss this claim.

### C. Title VII Claims

Miller has brought suit against Workplace, alleging unlawful harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Workplace has filed a motion to dismiss these claims.

An employment discrimination plaintiff need not allege specific facts establishing a prima facie case of discrimination. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Bass v. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir.2003). The prima facie case under McDonnell Douglas is an evidentiary standard, not a pleading requirement. *Swierkiewicz,* 534 U.S. at 510–11, 122 S.Ct. 992 ("[the Supreme Court] has never indicated that the requirements for establishing a prima facie case under McDonnell Douglas also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.") Instead, a plaintiff must comply with Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to provide defendant fair notice of the nature of plaintiff's claims and the grounds upon which they rest. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Bass,* 324 F.3d at 765 ("a plaintiff *is* required to allege facts that support a claim for relief"). Finally, Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. *Swierkiewicz,* 534 U.S. at 515, 122 S.Ct. 992.

### 1. Sexual Harassment Under Title VII.

The Supreme Court has recognized that the sexual harassment of an employee may give rise to a claim of sex discrimination under Title VII. Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ...

to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Plaintiff is alleging that she was harassed under the hostile environment theory, in which the harasser's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a)(3); *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

An employee must prove the following to prevail on a hostile work environment claim: (1) that she was harassed "because of" her "sex"; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer. *See Hartsell v. Duplex Prods., Inc.,* 123 F.3d 766, 772 (4th Cir.1997).

Defendants advance two arguments in support of their motion to dismiss: Miller failed to plead sufficient facts to establish that the conduct she complains of was (1) based upon her gender; and (2) sufficient to alter her employment conditions and create an abusive work environment. (Def. Mem. at 15.) The Court holds that the Plaintiff has complied with the requirements of *Swierkiewicz* and supplied "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to provide Defendants fair notice of the nature of Plaintiff's claims and the grounds upon which they rest.

Considering the Defendant's first argumentMiller was not harassed "because of" her "sex"—the Court holds that Miller has pled sufficient facts to support a claim for relief. Miller alleges that Murphy made lewd comments about women's breasts, legs, buttocks, and made frequent comments about female customers and speculated whether they had "boob jobs." (Compl.¶¶ 56–7.) Murphy frequently questioned her about her sex life, encouraged others to discuss their sexual proclivities in front of Miller, and made lewd remarks about women. (*Id.* at 51.)

The fact that Murphy made comments to and in front of others does not mean that the harassment was not based on sex. *See Ocheltree v. Scollon Prods., Inc.,* 335 F.3d 325, 332–33 (4th Cir.2003)(finding that sex-laden talk in a place of employment was aimed at the plaintiff because of her sex and because much of the conduct was offensive to women). In *Smith v. First Union National Bank,* the Fourth Circuit held that the plaintiff had sufficiently alleged that her supervisor harassed her "because of" her gender where "[e]xplicit and derogatory references to women appear[ed] in virtually all of [the] harassing remarks." 202 F.3d 234, 242 (4th Cir.2000). Similarly in this case, all of the allegedly harassing comments involve the objectification of women. Regardless of whether this claim will succeed on the merits, Miller has provided the Defendants fair notice of the nature of her claims and the grounds upon which they rest. *See Swierkiewicz,* 534 U.S. at 515, 122 S.Ct. 992.

The Defendants' second argument is that Murphy's alleged behavior was not severe and pervasive enough to rise to the level of actionable sexual harassment. The Defendants contend that courts, including the Fourth Circuit, have found conduct far more egregious than the conduct alleged in the complaint to fail to satisfy the "severe or pervasive" element of a hostile work environment claim. This

element of a hostile work environment claim is that the harassment must be sufficiently severe or pervasive so as to create a hostile work environment. *Smith,* 202 F.3d at 242 (citing *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Considering whether the harassment was sufficiently severe or pervasive, a court must look at all the circumstances to determine whether a work environment is hostile or abusive. These circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Id.* ("A work environment consumed by remarks that intimidate, ridicule, and maliciously demean the status of women can create an environment that is as hostile as an environment that contains unwanted sexual advances.")

Regarding this element, Plaintiff's allegations comply with the pleading requirements of Rule 8. Plaintiff need not produce sufficient evidence to show a *prima facie* case, at this point in the proceedings. The Defendant is correct: The case law is replete with cases, involving more graphic and severe harassment. However, the Plaintiff need not set forth every comment, remark, or insult in her complaint. Miller does not state that those specific instances constitute the full extent of the harassment she suffered. Given the allegations in the complaint, it does not appear beyond doubt that the plaintiff can prove no set of facts which could entitle her to relief. *See Riley v. Buckner,* 1 Fed.Appx. 130, 134, 2001 WL 15193 at *3 (4th Cir.

2001) ("We are satisfied that [general] allegations, coupled with a specific example ... are sufficient, though barely, to ... survive[ ] a motion to dismiss."); *see also Herdrich v. Pegram,* 154 F.3d 362, 369 (7th Cir.1998) ("A complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory. But such allegations need only state a possible claim, not a winning claim.").

When the allegations of the complaint are viewed in the light most favorable to Plaintiff, Defendants' alleged conduct could give rise to a cognizable hostile environment claim. Any further details relating to Miller's claims must properly await discovery. For the reasons set forth, the Court will deny Defendants' Motion to Dismiss the complaint for failure to state a claim for the sexual harassment claim.

## 2. Retaliatory Action Claim

Defendants set forth two arguments against Miller's claim of retaliation in violation of Title VII:(1) Miller was discharged not because of her race, color, religion, sex or national origin, but for inquiring into Washington Workplace's sexual harassment policy; and, (2) Miller was not engaged in a protected activity.

█ Title VII prohibits an employer from taking retaliatory action against an employee who opposes or complains about an unlawful employment practice or otherwise exercises rights under the statute. 42 U.S.C. § 2000e–3(a).[1] To establish a prima facie case of retaliation, a plaintiff

---

1. This section provides, in pertinent part, that it shall be an unlawful employment practice for any employer to retaliate against an employee or an applicant for employment "because he has opposed any practice made an unlawful employment practice by this sub-

chapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

must show that (1) she engaged in protected activity; (2) her employer took adverse employment action against her; and (3) a sufficient causal connection existed between her protected activity and her employer's adverse employment action. *McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir.1991); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989); *Dwyer v. Smith*, 867 F.2d 184, 190–91 (4th Cir.1989).

■ Defendants' first argument, upon examination, reveals itself as mere sophistry. The syllogism presented by the Defendant is as follows. Title VII prevents employers from discharging an individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. Washington Workplace discharged Miller because she requested a copy of the sexual harassment policy, which is not one of the five attributes protected by the statute. Therefore, Title VII does not prevent Miller's termination. However, one could easily substitute a clearly protected action—like filing a complaint with the EEOC—for Miller's activity, and the syllogism would still demand dismissal of the claim. In a retaliation claim, it is not the attribute of the plaintiff that is at issue, but rather the actions taken by the plaintiff. *See McNairn*, 929 F.2d at 980. Accordingly, the Court rejects the Defendant's first argument.

■■ However, the Defendants' second argument demands more discussion. Protected activities fall into two distinct categories: participation or opposition. *Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir.1998). Under the first category, an employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII. *Id.* Miller does not allege an investigation or proceeding under Title VII at the time

she was terminated. Therefore, if the Court is going to find that she engaged in a protected activity, it must be for opposing discriminatory practices.

■■ Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities. *Id.* The district court must employ a balancing test to determine if a plaintiff engaged in oppositional activity. The court must "balance the purpose of the Act to protect persons engaging reasonably in activities opposing ... discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." *Id.*

Defendants contend that asking for a copy of the company's sexual harassment policy does not constitute oppositional activity. *Compare Dea v. Washington Suburban Sanitary Comm'n*, 11 Fed. Appx. 352, 358–60 (4th Cir.2001) (holding that employee's refusal to hire less qualified minority, in belief that this would violate Title VII, was a protest constituting protected activity); *Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551–52 (4th Cir.1999)(holding that reporting sexual harassment of a colleague is protected activity); *with McNair v. Computer Data Sys., Inc.*, 172 F.3d 863, 1999 WL 30959 at *5 (4th Cir.1999) (holding that letter complaining generally of unfair treatment did not constitute opposition to racial or sexual discrimination); *Godon v. N.C. Crime Control & Pub. Safety*, 141 F.3d 1158, 1998 WL 193109 at *3 (4th Cir.1998)(upholding dismissal or retaliation claim because disagreement with disciplinary practices does not constitute opposition to unlawful employment practices).

 Employing the balancing test under *Laughlin,* the Court holds that requesting a copy of the company's sexual harassment policies is a protected activity under the Act. First, the Court must consider "the purpose of the Act to protect persons engaging reasonably in activities opposing ... discrimination." *Laughlin,* 149 F.3d at 259. Although Title VII attempts to compensate the victims of unlawful discrimination, its "primary objective ... is not to provide redress but to avoid harm." *Faragher v. City of Boca Raton,* 524 U.S. 775, 806, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). The EEOC has charged employers to "take all steps necessary to prevent sexual harassment from occurring, such as ... informing employees of their right to raise and how to raise the issue of harassment." *Id.* (quoting 29 C.F.R. § 1604.11(f)). The EEOC has issued a policy statement commanding employers to establish a complaint procedure "designed to encourage victims of harassment to come forward [without requiring] a victim to complain first to the offending supervisor." *Id.* (quoting EEOC Policy Guidance on Sexual Harassment, 8 FEP Manual 405:6699 (Mar. 19, 1990) (internal quotation marks omitted)).

 Title VII all but requires employers to have a sexual harassment policy to avoid vicarious liability for their employee's actions. *See Anderson v. G.D.C., Inc.,* 281 F.3d 452, 461 (4th Cir.2002) (holding employer failed to make good faith efforts to comply with Title VII where it had not promulgated an anti-discrimination policy); *Lowery v. Circuit City Stores, Inc.,* 206 F.3d 431, 446 (4th Cir.2000) ("an employer's institution of a written policy against race discrimination may go a long way toward dispelling any claim about the employer's reckless or malicious state of mind...."); *E.E.O.C. v. Wal–Mart Stores, Inc.,* 187 F.3d 1241, 1248 (10th Cir.1999)

("the extent to which an employer has adopted antidiscrimination policies and educated its employees about the requirements of the ADA is important in deciding whether it is insulated from vicarious punitive liability.").

In the opposite side of the balance lies "Congress's equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." *Laughlin,* 149 F.3d at 259. Given Title VII's desire for employers to have antidiscrimination policies, it is unclear how protecting requests for a copy of the antidiscrimination policy would "tie the hands of employers." The Court refuses to adopt a rule that rewards employers for terminating employees before they are able to lodge a formal complaint. Allowing employers to "nip in the bud" any potential complaint would clearly run contrary to the stated goals of Title VII. Miller was confronted with precisely the situation that the EEOC and Title VII attempt to prevent: Being confronted by her alleged harasser when she attempted to begin the process of making a complaint. Once confronted by Murphy, Miller clearly opposed him by refusing to answer his questions about her reasons for requesting the document.

Since the Court cannot find that the Plaintiff can prove no set of facts in support of her claim which would entitle her to relief, the Court cannot state as a matter of law that Miller's claim of retaliation in violation of Title VII must be dismissed.

### D. Wrongful Termination Claim

 Miller alleges that the Defendant wrongfully discharged her in violation of the public policies expressed in the Virginia computer harassment statute, Va.Code. Ann. § 18.2–152.7:1, and the Virginia Wage and Payment laws, Va.Code Ann. 40.1–29. Virginia continues adheres to the

doctrine of employment at will. *See, e.g., Lawrence Chrysler Plymouth Corp. v. Brooks,* 251 Va. 94, 465 S.E.2d 806, 808 (1996). However, in 1985, the Supreme Court of Virginia created a narrow exception to the doctrine for common law claims for wrongful termination where the termination violates a public policy of the Commonwealth. *See Bowman v. State Bank of Keysville,* 229 Va. 534, 331 S.E.2d 797, 801 (1985). However, this exception is "not so broad as to make actionable those discharges of at-will employees which violate only private rights or interests." *Storey v. Patient First Corp.,* 207 F.Supp.2d 431, 450 (E.D.Va.2002)

To assert a claim under *Bowman,* "a plaintiff must have either (i) a statutorily-created right which the termination interferes with or violates,...or (ii) a statutorily-imposed duty which the employee is terminated for refusing to violate ...." *Anderson v. ITT Industries Corp.,* 92 F.Supp.2d 516 (E.D.Va.2000)(Ellis, J.).

Miller does not allege that she was terminated for refusing to violate a statutorily imposed duty. Therefore, the Court must determine whether Miller's termination interferes with the public policy expressed by the two statutes relied upon by Miller. Although any statute of the Commonwealth reflects public policy to some extent, "termination of an employee in violation of the policy underlying any one of them does not automatically give rise to a common law cause of action for wrongful discharge." *City of Virginia Beach v. Harris,* 259 Va. 220, 523 S.E.2d 239, 245 (2000). The policy expressed by the statute must fit into one of two categories. *Id.* The first category contains laws containing explicit statements of public policy (e.g. "It is the public policy of the Commonwealth of Virginia [that] ..."). *Id.* The second one involves laws that do not explicitly state a public policy, but

instead are designed to protect the "property rights, personal freedoms, health, safety, or welfare of the people in general." *Miller v. SEVAMP, Inc.,* 234 Va. 462, 468, 362 S.E.2d 915, 918 (1987). Such laws must be in furtherance of "an [underlying] established public policy" that the discharge from employment violates. *Harris,* 523 S.E.2d at 245.

Virginia's Computer Harassment Statute, states:

> If any person, with the intent to coerce, intimidate, or harass any person, shall use a computer or computer network to communicate obscene, vulgar, profane, lewd, lascivious, or indecent language, or make any suggestion or proposal of an obscene nature, or threaten any illegal or immoral act, he shall be guilty of a Class 1 misdemeanor.

Va.Code Ann. § 18.2–152.7:1. The statute does not belong to the first category of statutes enumerated in *Harris,* in that it does not contain an express statement that "[i]t is the public policy of the Commonwealth of Virginia [that] ...." Regarding the second category, Va.Code Ann. § 18.2–152.7:1 is a criminal statute, and, as such, "has as an underlying policy the protection of the public's safety and welfare." *Harris,* 523 S.E.2d at 246. Therefore, the Court must determine whether Miller's reliance on the statute is in accord with that policy. *See Id.* Certainly, the statute does not confer any rights upon Miller.

Miller's best argument is that she is a member of the class of people that this statute was intended to protect and that Murphy's action were in violation of the statute. Miller only alleges that a computer was used in two manners that would violate Virginia's public policy against. First, Murphy showed Miller his Match.com personal ad and asked her to comment on it. (Countercl.¶ 43.) Sec-

ond, he allegedly "used the internet and Ms. Miller's e-mail address to distribute obscene, vulgar, profane, lewd, lascivious, and indecent e-mail messages suggesting and proposing obscene activities." (Countercl.¶ 58.) However, Miller has not alleged that Murphy committed these actions with the intent "to coerce, intimidate, or harass" her. Although the Court does not condone his actions, according to Murphy's own allegation he distributed these e-mails throughout the office and did not single her out. Furthermore, she was allegedly discharged because she requested a copy of the company's internal policies, and not because she refused to be intimidated or harassed by his e-mails.

■ The second statute that Miller argues supports a public policy that her termination violated the policy underlying the Virginia Wage and Payment law. The Act states, in pertinent part:

> No employer shall withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization of the employee. An employer, upon request of his employee, shall furnish the latter a written statement of the gross wages earned by the employee during any pay period and the amount and purpose of any deductions therefrom.

Va.Code. Ann. § 40.1–29. Miller claims that she was discharged, in part, because she requested a copy of her most recent commissions/wage statement. (Countercl.¶ 60.)

The act does not explicitly state that it expresses the public policy of the Commonwealth. The Court must next consider whether the statute was designed to protect "property rights, personal freedoms, health, safety, or welfare of the people in general." *SEVAMP, Inc.*, 362 S.E.2d at 918. The act does protect property rights, in so far as, workers have property rights in their wages. However, the act "does not create the right to be paid for work performed," but merely "prescribes the *manner* in which an employer must pay certain employees." *Pallone v. Marshall Legacy Inst.*, 97 F.Supp.2d 742, 745 (E.D.Va.2000)(Ellis, J.). The act provides only an administrative remedy for aggrieved employees. *Id.* Judge Ellis, in *Pallone*, held that the administrative remedy is the "sole remedy provided by the Act," and that the statute did not permit an implied private right of action there. *Pallone*, 97 F.Supp.2d 742, 746.

However, Judge Lee in *Wells v. G.R. Assoc., Inc.*, 2000 WL 33199263 (E.D.Va. 2000) found that the act did provide a policy allowing a *Bowman* action. The court held, "[t]he individual right to compensation implicates the property rights, ... or welfare of the people in general .... It seems clear, then, that the policy underlying the Act is a policy for the public, or a 'public policy.'" (citations and quotations omitted) *Wells*, 2000 WL 33199263, at *6 (citations omitted). This holding is consistent with a ruling of the Virginia Circuit court. *See Millsap v. Synon, Inc.*, 19 Va. Cir. 261, 262 (Va. Cir. 1990).

Defendants' attempts to distinguish *Wells* on the facts are unavailing. The question, at this stage, is whether the Act provides a policy allowing a *Bowman* action, and not whether Miller's claims falls within that exception. Defendants, of course, may return at the summary judgment stage and attempt to show that Miller does not fall within the exception outlined in *Wells*. The Court finds Judge Lee's reasoning in *Wells* persuasive and agrees that the Virginia Wage and Payment law provides such an exception. Accordingly, the Court will deny the De-

**380**

fendants motion as to Miller's wrongful termination claim under the Virginia Wage and Payment law and grant it under the Virginia's Computer Harassment Statute.

## IV. Conclusion

For the foregoing reasons the Court will grant the Defendant Workplace's motion to dismiss Count VII of the counterclaim and Defendant Murphy's motion to dismiss Counts I–III of the third party claims. Defendants motions will be denied in all other respects. An appropriate Order will issue.

### *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED that:

(1) Defendant Workplace's motion to dismiss Count VII of the counterclaim is GRANTED;

(2) Defendant Murphy's motion to dismiss Counts I–III of the third party claims is GRANTED;

(3) Defendants motions are DENIED in all other respects;

(4) the Defendants shall serve responsive pleadings within 10 days after notice of the court's action;

(5) the Clerk of the Court shall forward copies of this Order to all counsel of record.