STATE OF MAINE
CUMBERLAND, ss.

ᴛᴇ ᴏꜰ ᴍᴀɪɴᴇ
ᴄᴜᴍʙᴇʀʟᴀɴᴅ, ss
ᴄʟᴇʀᴋ'ꜱ ᴏꜰꜰɪᴄᴇ

2008 FEB 11  A 10: 48

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-06-663
TED - CUM - 2/11/2008

ANNE M. DAIGLE,

       Plaintiff,

v.

JAMESON TAVERN, LLC,

       Defendant.

## DECISION AND ORDER
## ON DEFENDANT'S MOTION FOR
## SUMMARY JUDGMENT

DONALD L. GARBRECHT
LAW LIBRARY

FEB 19 2008

## I. BEFORE THE COURT

This matter comes before the court on the defendant's Motion for Summary Judgment and the plaintiff's motion to strike affidavits.

## II. BACKGROUND AND PROCEDURAL HISTORY

The plaintiff, Anne M. Daigle (Daigle), formerly worked as a waitress at defendant Jameson Tavern, LLC (the Tavern), where she was employed from August 1997 to February 24, 2006. Daigle claims that during the latter half of 2004, Derek Herzog (Herzog), the head chef, began to sexually harass her and other female employees, creating a hostile work environment. Daigle's complaint alleges the following: that Herzog asked her invasive questions about her sex life, including asking, when she was single, whether she missed sex[1] and whether she was a lesbian; that he used nicknames to refer to the breasts and genitalia of Daigle and her co-workers; that he made "tongue gestures" toward her; that he told her that she was too thin and that he preferred women with meat on their bones; that he made comments about sexual

---

[1] Specifically, these inquiries included graphic inquiries about intimate relationships.

positions to her co-workers; and that he committed other acts of harassment that made her increasingly uncomfortable at work.

For the first several months that Herzog worked at the Tavern, Herzog's behavior was tolerable, but by Fall 2004, when Herzog was promoted to manager, his conduct had escalated to a level that Daigle found unacceptable. She states that she began to mention these incidents to her supervisor and friend, Carol Roy, as well as to Michele Moyen, another manager[2], and Anna Brown, the former kitchen manager. Once Daigle began dating another co-worker, Michael Salvaggio (Salvaggio), in September 2005, Herzog's questions changed to include inquires to both Daigle and Salvaggio about whether the couple was having sex.

Daigle further contends that the management at the Tavern had notice of these behaviors for over a year and a half and failed to stop them. She claims that another waitress, Amanda Mailly Bernier, complained to her superiors about Herzog's behavior toward her. Also, at a trip that the Tavern's managers made to a food show in 2005, none of the female managers wanted to ride with Herzog because he was a "pervert." Daigle alleges that all of the female servers were subjected to comments about their breasts, buttocks, nipples, and dress, and that they were ogled when they walked in and out of the kitchen. The Tavern admits that, a sign posted in the kitchen read, "The soup is not free," one of the managers wrote, "but the harassment is."

On February 6, 2006, Salvaggio was fired, although the parties dispute why this happened. Daigle admits that she and Salvaggio did not discuss the alleged sexual harassment until after he was fired. After Daigle complained again about Herzog's alleged harassment on February 14, 2006, either Michele Moyen or Carol Roy encouraged her to put her complaints in writing. The Tavern has a sexual harassment

---

[2] The parties dispute whether Moyen was a human resources manager or an office manager.

policy and a procedure for reporting such harassment, but the parties dispute how long that it was in existence.

Daigle made a formal sexual harassment complaint on February 17, but states that the Tavern did not initially act upon her complaint. Herzog then filed a false sexual harassment claim against her. John Stiles (Stiles), the owner and general manager of the Tavern, returned from vacation on February 18 and claims that he promptly began to investigate the complaint. The Tavern claims that Stiles spoke to six or eight people, who all denied having witnessed Herzog commit any sexual harassment toward Daigle. Daigle argues that Stiles only spoke to five people and denies that the investigation revealed that no harassment occurred. Ultimately, Stiles concluded that Daigle participated in inappropriate conversations, which she denies.[3] Daigle claims that she would either say, "I'm not interested," or respond to the questions only to get Herzog to be quiet. While investigating the complaint, Stiles never spoke to Daigle directly. He contends that this was because she had quit her job by February 24, but she was still employed by the Tavern when the investigation began. Daigle claims that she resigned her job because the harassment forced her to quit.

After filing a discrimination claim with the Maine Human Rights Commission (MHRC), Daigle received a right to sue letter and filed a complaint in this court seeking compensatory and punitive damages because of the hostile work environment and retaliation.

---

[3] In his deposition, when asked why Daigle would have participated, Stiles testified that he did not know that Daigle did participate in the sexual conversations.

# III. DISCUSSION

## A. Standard of Review

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. A party wishing to avoid summary judgment must present a prima facie case for the claim or defense that is asserted. *Reliance National Indemnity v. Knowles Industrial Services*, 2005 ME 29, ¶ 9, 868 A.2d 220, 224-25. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

## B. Hostile Work Environment

Daigle alleges that she was subjected to a hostile work environment at the Tavern in violation of 5 M.R.S.A. § 4572(1)(A), the Maine Human Rights Act (MHRA). To demonstrate that a hostile work environment exists, a plaintiff must show:

(1) that she is a member of a protected class;

(2) that she was subjected to unwelcome sexual harassment;

(3) that the harassment was based upon sex;

(4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of the plaintiff's employment and create an abusive work environment;

(5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and,

(6) that some basis for employer liability has been established.

*Crowley v. L.L. Bean Inc.*, 303 F.3d 387, 395 (1st Cir. 2002). "Hostile environment claims involve repeated or intense harassment sufficiently severe or pervasive to create an abusive working environment." *Doyle v. Dept. of Human Servs.*, 2003 ME 61, ¶ 23, 824 A.2d 48, 56. Even if a hostile work environment exists, however, an employer may evade liability if "it exercised reasonable care to prevent and correct" the alleged harassment and if the plaintiff "unreasonably failed to take advantage of" the employer's preventive or corrective measures. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

## 1. Work Environment

The court must determine whether Daigle has made a prima facie showing that a hostile work environment existed. Neither side discusses elements one, two, five, and six of the test for a hostile work environment as expressed in *Crowley*. Instead, the arguments focus on whether the harassment was gender-based and whether it was severe or pervasive enough to affect the work environment.

First, the Tavern argues that Herzog's behavior was not based on Daigle's gender, and that his prying personality colored his encounters with both men and women equally. To prevail on a claim for gender-based harassment, Daigle must prove that "the offensive conduct would not have occurred but for her sex." *Bowen v. Dept. of Human Servs.*, 606 A.2d 1051, 1053 (Me. 1992). Also, the Tavern relies on two First Circuit cases for the proposition that sexual comments and personal questions are not per se gender-based harassment.

In *Conto v. Concord Hospital, Inc.*, the First Circuit stated that the use of sexual words or "offensive utterances" does not necessarily indicate that gender-based harassment is occurring. 265 F.3d 79, 82-83 (1st Cir. 2001). In *Lee-Crespo v. Schering-Plough De Caribe, Inc.*, the Court concluded that the plaintiff had not been subjected to a hostile work environment because the employee involved simply was unprofessional and had boundary issues. 354 F.3d 34, 46-47 (1st Cir. 2003). Daigle, however, points to a case in which the United States District Court for the Eastern District of Virginia held that questions posed to a plaintiff about her sex life and "lewd comments about women's breasts" could constitute gender-based harassment, as "all of the allegedly harassing comments involve[d] the objectification of women." *Miller v. Washington Workplace, Inc.*, 298 F. Supp. 2d 364, 374-75 (E.D. Va. 2004).

Also, in *Jennings v. Univ. of North Carolina*, the Fourth Circuit concluded that "[s]exual harassment occurs when the victim is subjected to sex-specific language that is aimed to humiliate, ridicule, or intimidate." 482 F.3d 686, 695-96 (4th Cir. 2007). There, the university had argued that comments made to female athletes were merely jokes, but, viewing the facts in the light most favorable to the plaintiff, the Court determined that the statements and questions about the women's sex lives and their breasts "were degrading and humiliating to his players because they were women." *Id.*

Here, the Tavern suggests, and Daigle admits, that Herzog "picked on" other employees, some of whom were male. For example, Herzog wrote up one employee for taking a cigarette break at the wrong time. However, treating an employee in a stern fashion does not necessarily imply *sexual* harassment. Also, the Tavern argues that Herzog harassed at least one male employee by slapping his buttocks and by playing "dirty Christmas carols" for him while the two were in a parking lot on a break. Daigle admits that Herzog asked prying questions and wanted to know about the personal

lives of all the employees (although Herzog denies having asked employees sexual questions). Thus, the Tavern argues, Herzog harassed both men and women, and the harassment was not gender-based.

This argument presumes that men and women would respond to sexual innuendo or conduct in similar ways. Asking employees about their personal lives may be quite different than making sexual gestures and evaluating a female employee's physique, and men and women might respond differently to such gestures. Moreover, some of the sexual questions that Herzog allegedly asked of male and female employees occurred after hours while the employees were having drinks together. An after-hours environment, or a break, in which friends are socializing is vastly different than one's work environment. Additionally, the allegedly offensive remarks in this case were made by someone in a supervisory capacity.[4] Also, the record contains allegations that Herzog asked both men and women about their sex lives, but some of the comments that Daigle alleges were made, including comments about her being too thin or about another waitress's nipples, were directed only at female employees. Daigle also contends that Herzog looked at her with "a sexual look on his face," something not reported by male employees. These comments and behaviors are more analogous to the sexual questions and comments about female anatomy made in *Jennings* than the "jokes" referenced in *Lee-Crespo*.

The effect of Herzog's questions and comments on Daigle and the other employees is a factual question that cannot be resolved on a summary judgment motion. The court cannot say, as a matter of law, that Herzog's treatment of men and women was equally offensive and, therefore, not gender-based. The fact finder must

---

[4] The parties agree that Herzog had the power to hire and fire employees once he was promoted to kitchen manager, and that he had a responsibility to uphold the sexual harassment policy.

determine whether Herzog's treatment of male employees was equal to the alleged harassment that female employees like Daigle faced.

The Tavern further suggests that Herzog's behavior was not severe enough or pervasive enough to cause a change in Daigle's work environment. According to *Doyle*, Daigle need not prove that the conduct was both severe and pervasive; rather, she must prove that it was severe *or* pervasive. The Tavern denies that it was either. As mentioned above, Daigle alleges that the sexual comments and conduct spanned approximately a year and a half. She worked multiple shifts with Herzog each week. Viewing these facts in the light most favorable to Daigle, a jury could conclude that the behavior was either severe or pervasive, both of which are essentially factual determinations.

Because genuine issues of material fact exist as to whether Herzog's alleged harassment of Daigle was gender-based and whether it was severe or pervasive, summary judgment is not appropriate on Daigle's hostile work environment claim.

### 2. Tavern's Actions

Assuming that a hostile work environment existed, the Tavern may still avoid liability for that environment if it exercised reasonable care to prevent and correct the conditions creating the hostile environment. *Faragher*, 524 U.S. at 807. The existence of a policy manual or handbook may constitute proof of reasonable care. *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 266 (4th Cir. 2001). The Tavern argues that, even if a hostile work environment existed, it took reasonable steps to prevent and correct the problems. It points to its employee handbook, which contains a provision prohibiting sexual harassment and provides for employee reporting of such harassment. Once Daigle filed her complaint in February of 2006, Stiles conducted an investigation. Herzog was placed on paid administrative leave for a week while Stiles spoke to several

8

employees about Daigle's allegations, although he did not speak to Daigle. Even after Daigle left her employment at the Tavern, the investigation continued. Although he did not conclude that sexual harassment had occurred, Stiles noted enough inappropriate behavior on Herzog's part to issue him a written reprimand on March 3, 2006.

However, the Tavern fails to convincingly rebut Daigle's claim that it did not take steps to address the situation prior to the day that she filed a formal complaint, as she had reported the harassment to several people, including the human resources manager, since the fall of 2004. The record reveals that those in management positions knew generally about the problems with Herzog at least by 2005, if not before, when the managers went on a trip and the women in the party refused to travel with Herzog because he was a "pervert." The fact that a manager herself wrote about harassment on a sign posted in the kitchen lends credence to the suggestion that management had notice of the situation well in advance of Daigle's complaint.

The Tavern does not allege that it did anything to address the employees' discomfort with Herzog prior to its February 2006 investigation. At his deposition, Stiles testified that he had no training regarding how to investigate a sexual harassment complaint and that there was no policy governing investigations; the handbook merely sets forth a procedure for reporting harassment to management. The fact finder may assess the significance of the sexual harassment policy when it assesses the reasonableness of the Tavern's efforts, but the existence of a policy is not dispositive of the question. The aforementioned incidents, taken together, present a genuine issue of material fact as to whether the Tavern actually did take the preventive or corrective measures necessary to address sexual harassment if a hostile work environment existed.

### 3. Daigle's Response to the Tavern's Preventive or Corrective Measures

The Tavern also contends that Daigle unreasonably failed to take advantage of the remedies available to her because she claims the incidents began in fall 2004, but did not file a complaint, as provided by the handbook, until February 2006. The Tavern concedes that she did speak to Carol Roy, but alleges that Daigle discussed the incidents in passing and did not expect Roy to take any action. Daigle argues that she not only repeatedly reported Herzog's behavior to Roy, but she also spoke with the human resources manager and kitchen manager about the harassment.

An employer may be deemed to have notice of harassment even if a victim does not come forward herself. *See Sims v. Health Midwest Physician Servs. Corp.*, 196 F.3d 915, 920 (8th Cir. 1999); *Young v. Bayer Corp.*, 123 F.3d 672, 675 (7th Cir. 1997); *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63-64 (2d Cir. 1998). Notwithstanding the formal grievance procedure in the handbook, Daigle may also have felt that she effectively alerted her superiors to the situation with Herzog short of taking such an action. The reasonableness of Daigle's efforts to put her employer on notice through various supervisors and managers is a factual issue that should not be resolved at the summary judgment stage. Viewing these facts in the light most favorable to Daigle, there is evidence from which a jury could determine that Daigle's reporting of the behavior put the Tavern on notice of the harassment.

Because genuine issues of material fact remain concerning the existence of a hostile work environment, the reasonableness of the Tavern's efforts to address the problem, and the reasonableness of Daigle's efforts to take advantage of the Tavern's harassment procedures, summary judgment must be denied on Count I.[5]

---

[5] The court notes that the Tavern submitted 100 separate statements of material fact, and Daigle submitted 56. The sheer number of factual issues in this case, many of which are clearly disputed, exceed

10

## 4. Retaliation

In Count II of her complaint, Daigle alleges that the Tavern retaliated against her for reporting sexual harassment. This allegation seems to be based on the fact that Herzog filed a baseless sexual harassment claim against her after she had filed her complaint, and that Daigle claims that the Tavern did not properly investigate her claim. Daigle has not opposed the Tavern's argument in support of summary judgment on this count.

The MHRA requires a plaintiff to demonstrate that she engaged in a statutorily protected activity, that her employer acted in an adverse manner toward her in response, and that there was a causal connection between her activity and the negative employment action. *Doyle*, 2003 ME 61, ¶ 20, 824 A.2d at 55-56. First, the Tavern correctly notes that it cannot be said to have retaliated against Daigle on the basis of Herzog's baseless claim. Indeed, the Tavern found his claim to be without merit. The question then becomes whether Daigle's claim that the Tavern failed to investigate her claim to her satisfaction constitutes retaliation.

Although reporting sexual harassment would be a protected activity, the record does not reveal any adverse action taken by the Tavern against Daigle. It did investigate her claim, but she resigned her position before the investigation was completed, allegedly because she felt that the work environment was increasingly hostile. Still, Daigle has not presented any evidence that the Tavern took any adverse action against her because she filed a sexual harassment complaint. Because she has not opposed the motion on this issue, and because she has not established the requisite

---

the reasonable standard set out by the Law Court in *Stanley v. Hancock County Commissioners*, 2004 ME 157, ¶¶ 27, 28, 864 A.2d 169, 178-179, and suggests that it was folly to seek summary judgment on the hostile work environment claim.

11

elements for a retaliation claim, summary judgment must be granted for the Tavern on this claim.

## D. Punitive Damages and Non-Economic Damages

Daigle seeks an award of both punitive and non-economic damages in this case. To recover punitive damages under the MHRA, Daigle must prove that the Tavern "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to [her] . . . rights." 5 M.R.S.A. § 4613(2)(B)(8)(c). The plaintiff must show such malicious or reckless discrimination by clear and convincing evidence. *Batchelder v. Realty Res. Hospitality*, 2007 ME 17, ¶¶ 21-22, 914 A.2d 1116, 1124.

Viewing the facts in the light most favorable to Daigle, she has not necessarily demonstrated that the Tavern acted with malice. She has, however, raised a genuine issue of material fact as to whether it acted with reckless indifference by not disciplining Herzog or addressing his behavior prior to her filing a formal complaint. The fact finder must decide whether the Tavern's inaction rose to the level of reckless indifference, and if so, whether this justifies an award of punitive damages. Summary judgment must be denied on this issue.

As for non-economic damages, the Tavern argues that it is entitled to a summary judgment limiting Daigle's recovery, if any, to $2,500, the amount of her incurred medical expenses. Under the MHRA, Daigle can demonstrate her eligibility for compensatory damages by proving that she experiences "emotional pain, suffering, inconvenience, mental anguish, [and/or] loss of enjoyment of life." 5 M.R.S.A. § 4613(2)(B)(8)(e). The Law Court has noted that this language "plainly contemplates a much lower threshold for an awarding of damages" that is comparable to the "criteria of general tort actions." *Kopenga v. Davric Me. Corp.*, 1999 ME 65, ¶ 18, 727 A.2d 906, 910. In that case, the plaintiff's testimony concerning the degradation and humiliation

12

she experienced as a result of her employer's alleged gender discrimination was sufficient to support a compensatory damages award. *Id.*

Daigle alleges that Herzog's conduct caused her distress for a prolonged period. Before Herzog worked at Jameson Tavern, Daigle had enjoyed her job for seven years. Daigle contends that as a result of Herzog's repeated harassment, she was upset, embarrassed and humiliated. She claims that she often left work upset, and that these feelings intensified after Herzog told her co-workers not to talk to her in February 2006. Toward the conclusion of her employment, Daigle alleges that she would be in tears at the end of every shift and had difficulty taking care of her customers. Although she has since found other employment, she claims that she does not make as much money now. At this stage, the record contains sufficient allegations of emotional distress for a fact finder to conclude that Daigle may be entitled to an award of compensatory damages in excess of her $2,500 in medical expenses. Summary judgment on this claim mustbe denied.

## E. Plaintiff's Motion to Strike

Daigle has moved to strike the affidavits of several employees submitted by the Tavern concerning Herzog's behavior because they were not timely produced in discovery.

Without discussing the merits of the plaintiff's Motion to Strike, the court notes that motions to strike factual allegations filed in support or in opposition to a motion for summary judgment "are not permitted." M.R.Civ.P. 56(i)(1).

> "If a party contends that the court should not consider a factual assertion
> . . . the party may set forth an objection in either its opposing statement or
> reply statement and shall include a brief statement of the reason(s) for the
> objection and any supporting authority or record citations."
> *Id.*

The fact that plaintiff objects to supporting affidavits rather than averments in the statement of material facts, does not change the intent or purpose of the rule. Any objections could have been included in her memorandum.

## IV. DECISION AND ORDERS

The clerk will make the following entries as the Decision and Orders of the court:

A. The defendant's Motion for Summary Judgment is denied as to claims based on hostile work environment and compensatory and punitive damages.

B. The defendant's Motion for Summary Judgment is granted as to plaintiff's retaliation claim. Judgment is entered for defendant Jameson Tavern on Count II.

C. The plaintiff's Motion to Strike is dismissed.

SO ORDERED.

DATED: February ___8___, 2008

Thomas E. Delahanty II
Justice, Superior Court

14

COURTS
nd County
x 287
e 04112-0287

RONALD SCHNEIDER ESQ
LORELLE DWYER ESQ
BERNSTEIN SHUR SAWYER & NELSON
PO BOX 9729
PORTLAND ME 04104-5029

COURTS
nd County
x 287
e 04112-0287

GUY LORANGER ESQ
NICHOLS WEBB & LORANGER
110 MAIN ST
SUITE 1520
SACO ME 04072